DECISION
Thomas Wilson, Leslie Oh, William Derrig and Leslie Derrig ("Appellants"), challenge the City of Warwick Zoning Board of Review's ("Board") decision granting Michael and Barbra Lemme's ("Lemmes") application for a variance/special use permit for the construction of a single family home. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
The Lemmes purchased the subject property located on Old Mill Boulevard in Warwick, designated as Assessor's Plat 334, Lots 238, 239 240 ("the Property"), on August 23, 2000. On May 25, 2000 the Lemmes filed an application for a variance/special use permit with the Board to construct a 40' x 30' single family home with an attached deck. The deck had less than the required setback from the coastal feature and the house had less than the required front line setback. The Board granted the variance on June 13, 2000, contingent on the petitioners tying into the Warwick Sewer System.
At the time that the variance was granted, the Mill Cove neighborhood, where the proposed house would be located, was not tied into the Warwick Sewer System. As a result, the Lemmes' requested an extension of the variance/special use permit for an additional year on August 7, 2001. The Lemmes were forced to seek a further extension from the Board on June 24, 2002 because the sewer lines had not yet been extended to the Mill Cove Neighborhood. The Board denied the request for an extension, because the plans had changed from the original application. The second extension, indicated a septic system instillation, as opposed to the sewer tie-in required by the zoning board as a condition of the variance.
Due to the significant change in the Lemmes' plans, the Board decided to accept a new application for a variance/special use permit. The Board heard testimony and approved the application on July 16, 2002. The question of sewage disposal was an issue again in this proceeding. The Board heard testimony from William DePasquale, of the Warwick Planning Board, who recommended that "the Petitioner wait in time for sewers when they become available. However, if the board determines this request cannot be reasonably accomplished, the Department recommends the Zoning Board of Review, if they see fit to grant this petition, include a stipulation that requires the Applicant to abandon use of the septic system and tie into sewers when sewers become available." (Transcript at 8). The Board heard further testimony from the Applicant, Michael Lemme, who testified as to the specifics of what was being constructed and that he was asking for a variance allowing him a two (2) foot setback from the fifty (50) foot coastal feature and a ten (10) foot variance from the front line setback. (See Transcript at 10-11). Lemme also testified that he had been in contact with Coastal Resources Management Council ("CRMC"), and that they had informed him "that consistent with RICRMC, Section 120, . . . the CRMC supports efforts to obtain zoning setback references from local municipalities where such efforts are intended to meet CRMC buffer zone and setback requirements from coastal features." (Transcript at 14-15, reading letter). CRMC also indicated in this letter that they were holding his application open, while his application for a variance was pending.
The Board also heard from Joseph Frisella ("Frisella"), an expert in engineering and land surveying, who was hired by the Lemmes to support their application. Frisella testified that the ISDS system was, "[t]o the best of [his] knowledge, information, and belief, . . . the best possible system under the regulation that are for this site that was determined by me to place this system on this site." (Transcript at 28). He further testified that the ISDS was approved and submitted the approval provided by DEM.
After the Lemmes concluded their presentation of evidence, the Board opened the meeting to the public to present any objections and evidence in opposition to the application. Numerous residents from the neighborhood attended the meeting to voice their objections. Thomas Wilson, the chair of the Mill Cove Neighbors Association, testified on behalf of the Association to voice their objection to the application. He cited numerous reasons why the Board should deny the application. Specifically he noted the effect that a house and a septic system would have on the coastal area. He also argued that approval of the application would violate the Warwick City Ordinance requiring that the density of the area not exceed one house for every 40,000 square feet in the Mill Cove neighborhood. The board also heard testimony from other neighbors who similarly expressed their objections.
Having all of this evidence before it, the Board decided to grant the Lemme's application for a variance. As part of the approval, the Board imposed a condition "[t]hat the petitioner must retrofit to a dentrification septic system/tie into the Warwick Sewer System when available." (Decision at 3). This case is now before this Court on appeal from the Board's decision.
 STANDARD OF REVIEW
The review of a zoning board of review's decision is controlled by G.L. 1956 § 45-24-69(d), which provides that the Superior Court
 "shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." G.L. § 45-24-69(d).
When reviewing the decision of a zoning board of review, this Court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina Collegev. Zoning Bd. Of Rev., 594 A.2d 878, 880 (R.I. 1991) (citing DeStefanov. Zoning Bd. Of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means in amount more than a scintilla but less than preponderance." Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). "Moreover, `the reviewing court is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence in the whole record.'" Mendosa v.Corey, 495 A.2d 257, 260 (R.I. 1985) (quoting Apostolou v. Genovesi,120 R.I. 501, 509, 388 A.2d 821, 825 (1978)). "The Court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced . . ." Lischio v. Zoning Board ofthe Town of North Kingstown, 818 A.2d 685, 690 (R.I. 2003).
 ZONING BOARDS DECISION GRANTING A DIMENSIONAL VARIANCE
Rhode Island General Laws § 45-24-41(c) provides the requirements for obtaining a dimensional variance. The law states:
 (c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in section 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary. G.L. § 45-24-41(c).
At the July 16, 2002 hearing, the standard applied by the Board required the applicant to prove "`that the hardship suffered by the owner of the subject property is the dimensional variance if not granted amounts to more than a mere inconvenience, which means that there is noother reasonable alternative to enjoy a legally permitted beneficial useof ones property.'" Sciacca, 769 A.2d at 583 (citing G.L. §45-24-41(d)(2) (emphasis added)). Under this standard an applicant seeking a dimensional variance bears the burden of proving that "no reasonable alternative" exists. See Von Bernuth v. Zoning Board of Reviewof the Town of New Shoreham, 770 A.2d 396, 401 (R.I. 2001). However, on June 28, 2002 the General Assembly repealed the portion of G.L. §45-24-41(d), requiring the applicant to prove "that no other reasonable alternative to enjoy a legally permitted beneficial use of one's property" exists. This change reinstated the "Viti Standard", which states that "an applicant need show only that the effect of denying dimensional relief amounts to more than a mere inconvenience." Lischio v. ZoningBoard of the Town of North Kingstown, 818 A.2d 685, 692 (R.I. 2003). While the standard in place at the time of the Zoning Board's decision had changed, this Court notes that the Viti standard, which requires an applicant to prove that denying the dimensional variance would "amount to more than a mere inconvenience," is a more lienent standard as that required under Sciacca. The Appellants do not challenge the Boards use of the standard, and this Court notes that the standard used by the Board incorporates the appropriate Viti standard.
The Appellants assert the following reasons in support of there argument to reverse the decision of the Board. First, the Board ignored unrebutted evidence that the Lemmes' proposed construction is harmful to Mill Cove. Second, that the Board ignored the Warwick's Zoning Ordinance pertaining to the Mill Cove neighborhood's development density. Third, the Board's decision contains unsubstantiated conclusions. Finally, the Board violated Warwick's Zoning Ordinance one year requirement for a new application after a denial, when it heard the Lemmes' application twenty-two days after denying a similar application.
On review of a board decision, the Superior Court does not consider the credibility of witnesses, weigh evidence, or make its own findings of fact. See Munroe v. Town of East Greenwich, 733 A.2d 703 (R.I. 1999). Rather, its review is confined to a search of the record to ascertain whether the board's decision rests upon competent evidence or is affected by error of law. See Id at 705.
The Appellants contend that the Boards decision violates §45-24-41(c)(3), because the construction of this home will alter the general characteristics of the surrounding area or impair the intent or purpose of the zoning ordinance. Reviewing the record before this Court, the Board heard testimony from William DePasqual, of the Warwick Planning Board, who testified that the Planning Department would prefer that the Lemmes wait for the sewer lines to come to the area in order to be consistent with the preservation efforts ongoing in the Mill Cove area. (See Transcript at 8). He noted that if this suggestion could not be reasonably accomplished, and the Board were to grant the application, then he recommended that the Board require that the Lemmes abandon the use of the septic system when the sewer lines came to the area. (SeeId.)
Frisella, the Lemmes' expert, testified that he did the site work in conjunction with this application. He testified that the house as proposed would need a 10 foot 4 inch variance from the coastal feature and a 10 foot variance from the front yard setback. (See Transcript at 25). Mr. Frisella then proceeded to testify about the septic system proposed for the Property. He stated that the ISDS was the best system for the Property under the regulations for the area. (See Transcript at 28). He also informed the board that the ISDS was approved by DEM and provided a copy of the approval for the record. (See Id.) He also noted that a dentirification system might be required for the property. Frisella testified that he spoke to the appropriate authority, CRMC, with respect to this issue. (See Transcript at 29). He further noted that both CRMC and DEM were informed that this was waterfront property, that both agencies are best suited in Rhode Island to protect the public interests when dealing with a septic system on a water front lot.
Therefore when making its decision the Board was presented with evidence that the septic system proposed had been approved by DEM and was awaiting approval by CRMC. The Board heard this evidence and was satisfied that approving this application would not alter the general characteristics of the surrounding area.
The Appellant also challenges the Board's decisions on the effects of this construction on the area in relation to the density requirements under the City Ordinance. They note that an A-40 zone "is for very low density residential use and defines that as one house for every 40,000 square feet." (Transcript at 45). Furthermore, Wilson stated that the "density is 3.17 times the density prescribed by the ordinance." (Transcript at 45-46). For this reason, Wilson and the neighbors argue that to preserve the intent of the zoning ordinance the Board should have denied the application, as the Mill Cove area is already overdeveloped and would adversely impact the surrounding area.
In its decision the Board notes that the "subject lots were originally platted many years ago and were conforming lots prior to the adoption of the 1988 zoning ordinance." (Decision). The Board thus held that the lots were pre-existing, non-conforming lots of record and thus were entitled to the appropriate variance.
Reviewing the decision of the Board, this Court finds that the Board heard sufficient evidence to determine that the proposed construction and septic system would not adversely impact the Mill Cove area. To further ensure that the Mill Cove area was protected, the Board required that the Lemmes tie into the sewer system when it became available. Furthermore, the Board recognized that the Property was a pre-existing non-conforming use and as such was entitled to the appropriate zoning relief. For these reasons the Court finds that the Board heard sufficient evidence and that the decision was not affected by error of law.
Finally, the Appellants argue that the Board violated its rules of procedure when it reheard the Lemmes' application 22 days after it had denied their other application. Appellants point to the Zoning Board Rules of Procedure, which state that
 "No application shall be in order for a hearing within a period of one (1) year from the date of such denial, exception in those cases where it is alleged that new facts have arisen which could not have been presented to the Board at the time of its hearing, or where ownership of the property involved has changed. In such cases, the Board may, in its discretion, rehear the matter within one year period." (Warwick Zoning Board of Review Rules of Procedure at ¶ IV).
In the instant case the original application for a variance was granted on June 13, 2002. It was extended once, before being denied an additional extension on June 24, 2002. The second extension was denied by the Board because the plans submitted, with the application for extension, had changed from the original plan by substituting a septic system in place of a sewer tie-in. The Board then considered the new application with the plan calling for a septic system. Because the plans submitted to the Board had changed and there were new plans, the Board appropriately heard the new application.
 CONCLUSION
After review of the entire record, including exhibits, transcripts and memoranda, this Court finds that the Board had reliable, probative and substantial evidence before it to grant the variance sought by the owners. Accordingly, the decision of the Board is affirmed.
Counsel shall submit the appropriate judgment for entry by the Court after notice.